**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RONALD SUTHERLAND,** | § | |
| **(aka Ronald David Sutherland),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **Civil Action No. 4:19-cv-216-O** |
| | § | |
| **LANE AKIN, Sheriff,** | § | |
| **Wise County, Texas,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER
<u>RESOLVING PENDING DISPOSITIVE MOTIONS</u>**

Pending before the Court are Defendants Officer Gay and Aaron Shaw, M.D.'s motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mots. to Dism., ECF Nos. 69, 72. Plaintiff Ronald Sutherland ("Sutherland") filed a response to each motion, and Defendants Gay and Dr. Shaw filed replies. ECF Nos. 75, 76, 79, 80. Also pending is Defendants Kaci Sartor and Monica Doughty's combined motion for summary judgment. ECF Nos. 81, 82, 83. After considering the motions, all briefing, and the applicable law, the Court **GRANTS** each motion.

I.      **BACKGROUND**

A.      **Case History/Amended Complaint**

Plaintiff Sutherland initially filed a civil-rights complaint form with attachment pages. Compl., ECF No.1. Sutherland, without seeking leave of Court, subsequently filed several handwritten pleadings, including: a "First Amendment/Supplement" (ECF No. 11); a "Second Amendment/Supplement" (ECF No. 12); and a "Third Amendment/ Supplement" (ECF No. 13). The Court directed Sutherland to file a form civil-rights complaint with any attachment pages as

1

an amended complaint and informed him that "once the form amended civil-rights complaint is filed, the Court [would] look **only** to that document with any attachment pages in reviewing his claims." Order, ECF No. 14 (emphasis in original). In accordance with the Court's order, Sutherland filed an amended complaint with attachment pages. Am. Compl.1-26, ECF No. 15. That amended complaint included numerous claims against a large number of defendants arising from different periods of time when Sutherland was an inmate at the Wise County Jail and later at the Tarrant County Jail. *Id.*

On February 9, 2021, the Court dismissed some of Sutherland's claims and defendants in the amended complaint under 28 U.S.C. § 1915A(b)(1). Op. and Order,  ECF Nos. 26, 27. But the Court allowed Sutherland to obtain service of process of his remaining claims under 42 U.S.C. § 1983 against several individual defendants, including Wise County nurse Kaci Sartor ("Sartor"); Wise County healthcare provider Sue Fleming ("Fleming"); Wise County physician Dr. Charles Tibbels ("Dr. Tibbels"); Tarrant County physician Dr. Aaron Shaw ("Dr. Shaw"); Tarrant County Officer Erick Gay ("Gay"); Tarrant County Jail nurse Lavonia Messick ("Messick"); and Wise County officer Monica Doughty ("Doughty") (ECF Nos. 26, 28, 29).

### B.    Status of Parties

The first defendant to appear was Dr. Tibbels, and though the Court denied his motion to dismiss, he has now filed an answer and remains before the Court. ECF Nos. 37, 64, and 67. Nurse Messick also filed a motion to dismiss, and the Court granted her motion and Sutherland's claims against her were dismissed with prejudice. ECF Nos. 46, 64. After providing Sutherland additional time to effect service of process on other defendants, because he failed to timely effect proper service upon three of them by a deadline of August 23, 2021, the Court initially dismissed Fleming, Gay, and Dr. Shaw under Federal Rule of Civil Procedure 4(m). Order of Dismissal,

ECF No. 58; Rule 54(b) Judgment, ECF No. 59. In a post-judgment motion, however, Sutherland provided evidence that he had completed service upon Officer Gay and Dr. Shaw, such that the Court vacated its prior order, in part, and provided time for an answer from Gay and Dr. Shaw. As noted, they have each appeared through motions to dismiss that are ripe for review. Subsequently, Wise County defendants Sartor and Doughty have filed a motion for summary judgment, and their collective motion is ripe for review. Thus, at this time, only five defendants remain before the Court, and Sutherland's claims against four of them are addressed herein.

## II.      MOTIONS TO DISMISS OF DEFENDANTS GAY and SHAW

### A.      Rule 12(b)(6) Standard Applicable to both Motions

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A*

*Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet the requirements of *Iqbal* and *Twombly* no viable claim is stated and the pleadings are subject to dismissal.

**B.    Officer Gay's Motion to Dismiss**

1.    <u>Overview of Sutherland's Claims Against Officer Gay</u>

Sutherland's live remaining claims stated against Officer Gay are as follows:

1.      Claim of liability against Officer Gay for alleged violation of rights under 42 U.S.C. § 1983 for a claim of alleged "inhumane conditions of confinement exposure" at the Tarrant County Jail (Am. Compl. 4, 12, ECF No. 15);

2.      Sutherland seeks declaratory and injunctive relief (Am. Compl. 4-5 Section V, "Statement of Claim" ¶ 1, and Section VI "Relief," ECF No. 15); and

3.      Sutherrland also seeks punitive damages (Am. Compl. 4-5 Section VI "Relief," ECF No. 15).

2.      <u>Failure to State a Violation of a Constitutional Right</u>

a.      *No Showing of a Personal Involvement by Officer Gay*

Personal involvement is a fundamental element of any civil rights cause of action against an individual. *Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (other citations omitted)).  Sutherland fails to state any facts that show Officer Gay had any personal involvement with him and/or knowledge of the alleged "inhumane conditions" within Sutherland's jail cell. Am. Compl.  12, ECF No. 15.

Officer Gay is scarcely mentioned in Sutherland's amended complaint. Am. Compl. 4, 12, ECF No. 15. Sutherland generally asserts that due to unspecified acts or omissions of Gay, he was subjected to "inhumane conditions of confinement exposure." Am. Compl. 4, ECF No. 15. Sutherland also asserts that Officer Gay moved him from the Wise County Jail to the Lon Evans Corrections Center. Am. Compl. 9, 11, and 12, ECF No. 15. Other than Officer Gay moving Sutherland to the Lon Evans Corrections Center, Sutherland states no other act or omission involving Officer Gay.

Sutherland states he was subjected to deplorable conditions inside the Lon Evans Jail

5

facility. Am. Compl. 12, ECF No. 15. But he states no facts asserting that Officer Gay was involved in creating the conditions, aware of the conditions and took no corrective measures, or had any involvement whatsoever in the so-called deplorable inhumane conditions inside the jail. Such conclusory assertions are insufficient to plausibly suggest Sutherland is entitled to relief against Officer Gay. *Iqbal,* 556 U.S. at 679, 680. For this reason alone, the claims against Officer Gay fail. The claims also fail for other reasons as explained below.

> b.    *Sutherland's Claims Against Officer Gay Do Not State a Constitutional Violation*

The Constitution does not mandate comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Nor does the Constitution "require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, No. 09-2823, 2009 WL 5178316 *3 (E.D. La. Dec. 23, 2009) (citations omitted).  Prison conditions may be restrictive–even harsh–without violating the Eighth Amendment. *Rhodes*, 452 U.S. at 347.

In order to establish a Constitutional violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, *i.e.*, an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities;" and (2) that the prison official possessed a sufficiently culpable state of mind. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The required state of mind is one of deliberate indifference to inmate health or safety. *Id.* (*citing Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)). Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed. *Id.* (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)).

Sutherland asserts no facts that suggest Officer Gay did anything other than transport him to the Lon Evans Corrections Center in Tarrant County [from the Wise County Jail]. Sutherland makes no factual allegation that Officer Gay was aware of the alleged deplorable conditions. Further, Sutherland includes no factual allegation that Officer Gay possessed a sufficiently culpable state of mind, that is Sutherland does not allege that Officer Gay was actually aware of the cell conditions and/or that Officer Gay actually drew an inference that a potential for harm from such conditions existed. *Herman*, 283 F.3d at 664.

Thus, Sutherland's claims against Officer Gay fail to state a constitutional violation.

        *c.*      *Failure to Allege a Physical Injury under § 1997e(e) of the PRLA*

As the Court previously explained, because Sutherland was a "prisoner" as defined under § 1915(A)(c) of the PRLA at the time suit was filed, the PRLA still applies even though Plaintiff has been released from confinement. Op. and Order 9, n.2, ECF No. 26; *see also Johnson v. Hill*, 965 F. Supp. 1487, 1488 n.2 (E.D. Va. 1997); *accord Rackley v. Gusman*, CA No. 08-0825, 2009 WL 159170 at *1 (E.D. La. Jan. 16, 2009). Section 1997e(e) of the PRLA provides that a Plaintiff asserting recovery for constitutional violations is not entitled to recover compensatory damages "for mental or emotional injuries unless there is a prior showing of physical injury…" 42 U.S.C. § 1997e(e).

Here, Sutherland does not allege that he sustained a physical injury as a result of the alleged "deplorable conditions" that he endured while confined in the Lon Evans Corrections Center. Sutherland alleges that there was the "smell of feces" from the walls and around the toilet and that there was bloody bandages and decaying food present. Am. Compl. 11, 12, and 19, ECF No. 15. These allegations are essentially that he was housed in an unsanitary environment, which he stated lasted "for days" until he was ultimately moved. *Id.* The facts alleged by Sutherland show that, at best, he suffered a *de minimis* injury (if any), which is not

7

enough under § 1997e(e). *See Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630-31 (5th Cir. 2003) (concluding that two inmates could not recover damages from their temporary exposure to "deplorable conditions" because the only injury alleged was nausea from the smell of raw sewage); *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) (finding detainee's episodic act or omission claim against officials for confinement in an unsanitary cell for a period of 10 days failed because "a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation") (citation omitted); *Letizia v. Gonzalez*, No. H-18-4814, 2019 WL 2185518 at *2 (S.D. Tex. May 21, 2019) (dismissing inmate's conditions of confinement claims due to a lack of sufficient physical injury even though inmates alleged they were forced to defecate in plastic bags and urinate in the shower for a period of 5 days due to "no water service").

Because Sutherland has not alleged a sufficient physical injury to recover compensatory monetary damages, his claims for such relief must be dismissed.

3.      Claims Seeking Declaratory and Injunctive Relief are now Moot

Sutherland also seeks declaratory and injunctive relief. Am. Compl. 5, ECF No. 15. Those claims, however, are rendered moot by the fact that Sutherland is no longer housed at the Lon Evans facility. *See* April 8, 2022 Notice of Change of Address, ECF No. 87 (listing his on-the-street address in Wichita Falls, Texas); *see Herman*, 238 F.3d at 665 (holding that even if an inmate was able to establish a Constitutional violation, his transfer to another prison rendered moot his claim for declaratory and injunctive relief);  *see Hood v. Alford*, 3:04-cv-0473-D, 2004 WL 1146582 at *1 (N.D. Tex. May 20, 2004), *rep. and  rec. adopted*,  2004 WL 1393374 (N.D. Tex. June 21, 2004) ("Plaintiff is no longer incarcerated at the Johnson County Jail. His transfers to TDCJ-CID renders his claims for declaratory and injunctive relief moot as to all Defendants."). Moreover, Sutherland concedes that his claims for injunctive relief against

8

Officer Gay are moot. Resp. to Gay Mot. Dism.5, ECF No. 76. Thus, Sutherland's claims for declaratory and injunctive relief against Officer Gay must be dismissed for failure to state a claim upon which relief can be granted.

### 4.   No Facts Sufficient to Support a Claim for Punitive Damages

Sutherland also seeks punitive damages. Am. Compl. 5, Section VI "Relief," ECF No. 15.  Punitive damages, however, cannot be recovered unless there is an award of actual damages. Because Sutherland has not stated a claim under federal law that would support a right to recover actual damages, punitive damages cannot be recovered. Furthermore, an award of punitive damages under federal law requires a showing of the requisite intent, together with a violation of a constitutional right, which Sutherland has not shown. There is no abstract value of a constitutional right to be addressed with compensatory or punitive damages. *See generally Memphis Community School District v. Stachura*, 477 U.S. 299, 306 (1986).

For the foregoing reasons, the Court GRANTS Officer Gay's motion to dismiss for failure to state a claim upon which relief may be granted, such that all Sutherland's claims for relief against Officer Gay must be dismissed with prejudice.[1]

### B.   Dr. Shaw's Motion to Dismiss

### 1.   Sutherland's Claims against Dr. Shaw

Sutherland asserts two discrete claims against Dr. Shaw under 42 U.S.C. § 1983. First, he

---

[1] Officer Gay also assets that Sutherland's claims are barred by the statute of limitations. Gay's Mot.  Dism. 10-14, ECF No. 69. Because the Court can resolve the motion to dismiss on other grounds, it does not reach the limitations defense. The Court observes, however, this case was subject to screening under 28 U.S.C. § 1915A for a lengthy period of time, and Sutherland was then granted extensions of time to effect service of process. ECF Nos. 10, 28, 29, 53, 55, 62.

Officer Gay also asserts the defense of qualified immunity.  Gay's Mot. Dism. 14-15, 18-19, ECF No. 69. Because the Court can resolve the motion to dismiss on other presented grounds, the Court need not reach the qualified immunity defense.

alleges Dr. Shaw provided him inadequate medical care while he was at the Tarrant County Jail. Second, Sutherland alleges that Dr. Shaw violated his constitutional rights in that he was exposed to "inhumane conditions of confinement [and] exposure." Am. Compl. 4, ECF No. 15. Sutherland asserts that the conduct at issue involving Dr. Shaw occurred between October 2018 and February 2019 at the Lon Evans facility of the Tarrant County Jail.[2] *Id.* at 10-11. Dr.Shaw is referenced five times in Sutherland's amended complaint. *See id.* at 10, 11, 19. Sutherland alleges that:

> • On or about October 29, 2018, Sutherland was transported to Tarrant County Jail. During this time, he was treated by Dr. Shaw. Dr. Shaw ordered Plaintiff be provided access to a handicap shower and toilet, a cane, an extra blanket and an extra mattress. Despite Dr. Shaw's order, however, Sutherland never received these items, nor a walker or wheelchair. *Id.* at 10-11.

> • During the time Dr. Shaw was treating Sutherland, he referred him to an "ortho" – Dr. Patel – for his shoulder. Dr. Patel opined that Sutherland's shoulder was in such a condition that repair, if attempted, would be difficult if not futile. Dr. Patel still allegedly ordered surgery, which Dr. Shaw "did not follow through with." *Id.* at 11. This treatment was recommended in January 2019. *Id.* at 17.

> • On December 22, 2018, Sutherland was moved to the Lon Evans facility. *Id.* at p. 12. Sutherland was subjected to "deplorable inhumane conditions that continued for days including "feces on the walls" and "around the toilet," "bloody bandages," decaying food, and trash all over the cell. *Id.*

> • Nurse Messick and Dr. Shaw made rounds daily and were allegedly responsible for the care of two men and allegedly allowed the care of these two men (**not Plaintiff**) to allegedly "lapse into the inmates living in feces, bloody bandages, and trash." *Id.* at 19. "A condition that was compounded by officers' lack of concern and lack of cleaning that constituted the deplorable conditions Sutherland was introduced into and lived in for days." *Id.*

---

[2]The amended complaint actually references "10/29/2019," but based upon the remaining allegations in the amended complaint, including Sutherland's claim that he "was transferred back to Wise County Jail [from Tarrant County Jail] on 2/8/2019," this appears to be a typographical error. *See* Am. Compl. at 10-11, ECF No. 15.

• Sutherland "was basically forced to care for [two fellow] inmates and change diapers, clean feces without gloves or proper protection for over 2 weeks until he was moved." *Id.*

As previously noted, Sutherland is no longer housed at the Lon Evans facility, and has been released from confinement.

2.     Law Applicable to Claims of Denial of Medical Care.

Sutherland alleges that Dr. Shaw failed to provide him adequate medical care while he was a pretrial detainee at the Tarrant County Jail. Am. Compl. 21, ECF No. 15. As an alleged pretrial detainee at the time of the events made the basis of this case, Sutherland's rights flow from the procedural and substantive guarantees of the Fourteenth Amendment. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525-26 (5th Cir. 1999). The Fourteenth Amendment protects a detainee's right to be free from punishment prior to an adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Fourteenth Amendment also requires the state to provide for the basic human needs of pretrial detainees, including the right to adequate medical care. *Lacy v. Shaw*, 357 F. App'x 607, 609 (5th Cir. 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)). "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (internal citation omitted)). In order to establish a violation of this constitutional right, a detainee must show that a defendant acted with deliberate indifference to his serious medical needs. *Lacy*, 357 F. App'x at 609. To state a plausible claim of deliberate indifference, a plaintiff must demonstrate that the defendant has actual subjective knowledge of a substantial risk of serious harm, but responds with deliberate indifference to that

11

risk. *Id.* (citing *Hare*, 74 F.3d at 647-48). Such a finding of deliberate indifference "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In the medical care context, a detainee must show that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Lacy*, 357 F. App'x at 609 (citing *Johnson*, 759 F.2d at 1238). A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Allegations of negligence in the provision of medical care are not sufficient to maintain an action under 42 U.S.C. § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that the Constitution "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Thompson*, 245 F.3d at 458-59 (noting that deliberate indifference cannot be inferred from "negligent or even a grossly negligent response to a substantial risk of serious harm.")

       3.    Application of Law to Sutherland's Denial of Medical Care Claims Against Dr. Shaw

Sutherland devotes a substantial portion of the amended complaint to describing the preexisting nature of his injuries. For example, he alleges that immediately prior to his arrival at Tarrant County Jail, he was requesting medical care at Wise County Jail related to an injury for which he had undergone surgery three times. Am. Compl. 7-8, ECF No. 15. Months before his arrival at Tarrant County Jail, he lost a substantial amount of weight due to health issues. *Id.* at 11. He had also previously undergone "emergent surgery" at John Peter Smith Hospital related to

"severely compressed nerves." *Id.* at p. 9. He also claims to have had a "10-inch wound" and "C-spine stenosis." *Id.* at 10. Some or all of these conditions extend back to April 2018, if not earlier. *Id.* at 6 (describing diagnoses by U.T. Southwestern and Baylor Hospital) and 14 (detailing a 2013 lawsuit filed related to medical conditions).

Perhaps noting Sutherland's lengthy medical history, "upon [Plaintiff's] arrival at Tarrant County Jail," Dr. Shaw is alleged to have ordered that he receive certain accommodations or items to make him more comfortable. For example, Sutherland alleges Dr. Shaw ordered him to be provided access to a handicap shower and toilet, a cane, an extra blanket, and an extra mattress. *Id.* at 10-11. Despite Dr. Shaw's orders that Sutherland be provided with each of these items, Sutherland claims he never received "a cane or walker or wheelchair, no extra mattresses or blankets, nothing to accommodate the obvious need not to lay on a steel bunk." *Id.* at 10.

These allegations regarding lack of access to certain accommodations or equipment fall short of the type of deliberate indifference actionable under § 1983. Sutherland does not plausibly allege that he suffered any physical injury as a result of Dr. Shaw's action with respect to provision of "a cane or walker or wheelchair [,or] an extra blanket and extra mattress." *Id.* He does not allege what Dr. Shaw could have or should have done to assure his receipt of these items. In fact, Sutherland does not allege Dr. Shaw was aware (or should have been aware) that he never received these items. Finally, he does not allege that he suffered any injury due to lack of access to these items.

Sutherland also complains that Dr. Shaw "failed to follow through with . . . orders by an ortho specialist." *Id.* at 11. Specifically, he complains that Dr. Shaw did not ensure he received a surgical procedure recommended by Dr. Patel, an orthopedic specialist who also treated him

while he was an inmate at Tarrant County Jail. Given other facts contained in the amended complaint, these allegations about a failure to "follow through" with surgery are likewise not actionable under § 1983.

Sutherland alleges that he was an inmate in Tarrant County Jail from "on or about" October, 29, 2018,[3] until February 8, 2019. Am. Compl. 10-11, ECF No. 15. He alleges Dr. Patel did not even recommend surgery until "January 2019." *Id.* at 17. Depending on when in "January 2019" Dr. Patel treated Sutherland and recommended surgery, at most he remained in custody at Tarrant County jail for an additional one to six weeks. Sutherland does not establish how a few weeks delay in performing surgery on a preexisting condition constitutes the sort of deliberate indifference actionable under § 1983. *See Johnson*, 759 F.2d at 1238 (explaining that a finding of deliberate indifference "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants"). In addition, Sutherland has not established any injury caused by the delay. Based upon the facts pleaded by Sutherland, it is just as plausible as not that his condition would not have improved had he received the surgery.

Moreover, Sutherland alleges that it was Dr. Shaw who treated him in the first place and referred him to Dr. Patel for his shoulder issues. Am. Compl. 11, ECF No. 15.  In other words, Dr. Shaw was providing Sutherland with medical care. Sutherland also alleges Dr. Patel opined any attempt to repair his shoulder surgery would likely be futile. *Id.* ("repair would be difficult, if it did not fail."), but nevertheless recommended it be attempted. These allegations belie any contention by Sutherland that Dr. Shaw's care amounted to deliberate indifference to state a

---

[3]*See supra*, note 2.

constitutional violation.

For all of these reasons, Sutherland's claims against Dr. Shaw for failing to provide adequate medical care must be dismissed for failure to state a claim upon which relief may be granted.

> 4. Sutherland has Failed to State a Claim Against Dr. Shaw Based Upon Exposure to Inhumane Conditions of Confinement

Sutherland separately alleges claims against Dr. Shaw for what he describes as "deplorable conditions" of his jail cell and arising from his having to provide care to two of his fellow inmates. For the following reasons, Dr. Shaw is entitled to dismissal of these claims.

> a. Sutherland Fails to State a Constitutional Violation

As noted above, in order to establish a constitutional violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, *i.e.*, an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities;" and (2) that the prison official possessed a sufficiently culpable state of mind. *Herman*, 238 F.3d at 664. The required state of mind is one of deliberate indifference to inmate health or safety. *Id.* Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed. *Id.*

Sutherland's complaint regarding the uncleanliness of his cell does not concern Dr. Shaw but the jail officers. Am. Compl. 12, ECF No. 15 ("A condition that was compounded by officers' lack of concern and lack of cleaning . . ." also alleging that "officers put blankets in

front of the door to contain smell.") *Id.*   Dr. Shaw is not liable under §1983 for the alleged actions of another official. *See Estate of Munoz by Ruelas v. Ford*, 402 F. Supp. 3d 344, 350 (E.D. Tex. 2019) ("Officials are not liable for the conduct of other officials. Instead, each official's liability depends upon his or her 'own actions'") (citing *Hinojosa*, 807 F.3d at 668 (other citations omitted)). Thus, to the extent Sutherland's claims against Dr. Shaw involve the alleged sanitary conditions pertaining to his cell not being cleaned, such claims must be dismissed.

Moreover, Sutherland states that Dr. "Shaw was in charge of this medical unit." Resp. 2, ECF No. 75. Thus, Sutherland acknowledges that Dr. Shaw was not in charge of the jail officers, but rather the medical team. In this regard, he asserts, "Shaw was responsible for and created the deplorable conditions, and he failed to remedy those conditions" as well as "[t]hese were not perceived conditions and it is not debatable whether week long stretches of feces and bloody bandages and other filth causes by Shaw's placement in unsafe conditions and unsanitary living spaces rose to the level of a constitutional violation" while also referencing that Dr. Shaw "could not help but smell and see" the conditions. Resp. 1, 4, ECF No. 75. But awareness does not equal responsibility, and Sutherland has provided no more than conclusory statements to demonstrate any responsibility on the part of Dr. Shaw. Moreover, Sutherland references other officers who "had placed a blanket in front of the door" of his cell. Resp. 5, ECF No. 75. This claim is simply not plausible because, as Sutherland himself acknowledges, Dr. Shaw was affiliated with the medical unit, not with the prison officials or any sort of maintenance team, and, as such, Sutherland simply cannot maintain this claim against Dr. Shaw. In other words, even accepting Sutherland's allegations regarding the conditions in the jail cell as true, Dr. Shaw cannot be held

liable, and Sutherland's claim must be dismissed accordingly.

Lastly, Sutherland's claims related to the care that Dr. Shaw allegedly provided to two other inmates--neither of which are parties to this suit--are also not actionable under § 1983. Am. Compl. 21, ECF No. 15. To the extent Sutherland seeks to assert claims on behalf of these other inmates, he lacks standing to bring medical treatment claims on behalf of other inmates. *See Dodson v. Wilkinson*, 304 Fed. Appx. 434, 438 (6th Cir. 2008); *Wilson v. Caldwell Corr. Ctr.*, No. 3:16-CV-1321, 2016 WL 7840735, at *2 (W.D. La. Dec. 5, 2016), *rep. and rec. adopted*, 2017 WL 244749 (W.D. La. Jan. 18, 2017). Also, such allegations do not state a condition of confinement claim. Although Sutherland contends he had to change diapers and care for these inmates, he does not allege that it was Dr. Shaw who forced him to do this.  As such, to the extent these claims are asserted against Dr. Shaw, they must be dismissed for failure to state a claim upon which relief can be granted.

> b.   *Sutherland has Failed to Allege any Physical Injury Against Shaw to be Entitled to Compensatory Damages.*

As with regard to Defendant Gay, because Sutherland was a "prisoner" as defined under § 1915(A)(c) of the PRLA, he is not entitled to recover compensatory damages under section 1997e(e) of the PRLA "for mental or emotional injuries unless there is a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e).

Here, Sutherland has not pleaded a physical injury as a result of the alleged "deplorable conditions" alleged to have resulted from Dr. Shaw's acts and omissions. Sutherland complains of the "smell of feces" from the walls and around the toilet, and of the presence of bloody bandages and decaying food. Am. Compl. 10, 17, ECF No. 15. These complaints are essentially

that he was housed in an unsanitary environment, which allegedly lasted "for days" until he was ultimately moved. *Id.* The facts alleged by Plaintiff show that at best he suffered a *de minimis* injury (if any), which is not enough under §1997e(e). *See Alexander*, 351 F.3d at 630–31; *Desroche*, 507 F. Supp. 2d at 581; and *Letizia v. Gonzalez*, No. H-18-4814, 2019 WL 2185518, at *2. As such, Sutherland is not entitled to compensatory damages against Dr. Shaw and any such claims must be dismissed for failure to state a claim upon which relief can be granted.

### 4.   Claims Against Dr. Shaw for Declaratory or Injunctive Relief are Moot

Sutherland also asserts claims for declaratory and injunctive relief. Am. Compl. 5, ECF No. 15. As previously noted, such claims are rendered moot by the fact that Sutherland is no longer housed at the Tarrant County Lon Evans jail facility. *See* April 8, 2022 Notice of Change of Address, ECF No. 87 (listing his on-the-street address in Wichita Falls, Texas). Sutherland concedes that his claims for injunctive relief against Dr. Shaw are moot. Resp. to Shaw Mot. 6, ECF No. 75. As such, Sutherland's claims for declaratory and injunctive relief against Dr. Shaw must be dismissed for failure to state a claim upon which relief can be granted.

For all of these reasons, the Court finds that Dr. Shaw's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted, such that all Sutherland's claims against Dr. Shaw will be dismissed with prejudice.[4]

## III.   MOTION FOR SUMMARY JUDGMENT OF SARTOR AND DOUGHTY

### A.   Overview

---

[4]Dr. Shaw also asserts the defenses of state immunity under the Texas Health and Safety Code §§ 281.0286 and 281.0565 and qualified immunity. Dr. Shaw's Mot. Dism, 18-20, ECF No. 72. Because the Court has resolved the motion to dismiss on other grounds, the Court need not reach theses defenses.

Sutherland's claims against Defendants Sartor and Doughty stem from his detention in Wise County. Sutherland complains that Sartor and Doughty denied him adequate medical care while he was detained at the Wise County Jail, from May 17, 2018 through October 25, 2018, and again from February 8, 2019 through August 13, 2019. Record summaries reveal that, during these time periods, Sutherland was treated by several doctors and nurses, had back surgery, physical therapy, was provided antibiotics and other medications, and he was taken to and treated at the Wise County Regional Hospital and John Peter Smith ("JPS") Hospital in Fort Worth.

As set forth in detail below, Sutherland has not met the applicable standards in the Fifth Circuit to state claims against Sartor and Doughty for constitutionally inadequate medical care. Accordingly, Defendants are entitled to summary judgment on their assertion of the defense of qualified immunity.

**B.      Summary Judgment Standard**

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular

fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . .." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant [here, Sutherland] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

      **C.**      **Application of Qualified Immunity**

"A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing

20

*Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). In order to "negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but mut offer more than mere allegations.'" *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)). Qualified immunity protects government officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

The traditional approach to qualified immunity involves the two-prong analysis: (1) whether an official's conduct violated a constitutional right of the plaintiff, and (2) whether the right was clearly established at the time of the violation. *Mullinex v. Luna*, 577 U.S. 7, 11 (2015) (per curium); *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Thus, when a defendant asserts that he is entitled to qualified immunity, "a court has two options: It can decide that the plaintiff's constitutional claims lack merit, or it can decide that the defendant's conduct did not violate clearly established law. Which path to take is committed to [the court's] 'sound discretion.'" *Smith v. Heap*, No. 21-20329, 2022 WL 1117711, at *3 (5th Cir. April 14, 2022) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("We choose to address the merits, and there are none. Smith has not pleaded a constitutional violation – not even close."). Similarly, in this case, the Court can and does resolve that Sutherland has failed to state plausible claims of constitutional violations against Sartor and Doughty.

### D.   Sutherland's Claims against Sartor and Doughty

The court summarizes Sutherland's claims against defendants Sartor and Doughty in the

same manner listed by the Defendants:

1. Sartor and Doughty told him his records had been "sent for" after his arrival in the Jail. Am. Compl. 7, ECF No. 15.

2. Sartor claimed she could not find Dr. Amby [and thus presumably obtain his records]. *Id.* at 8.

3. Two days after failure to treat by [Nurses] Fleming and Sartor, Suthreland lost feeling in his legs because of compressed nerves [in his back]. He fell injuring his head and hand. He admits, however, that he was transported to hospitals in Wise County and then John Peter Smith Hospital ("JPS"). *Id.* at 4, 9.

4. Sutherland complains about JPS, but admits he received back surgery there. *Id.* at 9. He gives no time frames for these allegations.

5. When Sutherland was sent back to Wise County Jail, he claims he had to change his own bandages and had to lay in blood and fluids (no time period specified). He alleges he developed an infection. *Id.* at 9 (no dates given).

6. Sutherland claims he was transferred to Tarrant County Jail on or about October 29, 2019 [sic].[5] He admits that the Wise County Jail doctor, Dr. Tibbels, referred him to a shoulder specialist. *Id.* at 10.

7. After complaining about treatment at "Lon Evans" [sic], Sutherland recites that these Defendants routinely displayed his medical information in the main hallway of the Jail. *Id*. at 13.

8. Sutherland states that Defendant Sartor erroneously claimed his medical records did not accompany him from JPS and Tarrant County. *Id.* at 19.

9. Sutherland describes the fall for which he was transported to an emergency room on May 7, 2019, and also concedes he was seen by the Jail doctor after the fall. *Id.* at 12-22. There is no claim that Sartor or Doughty's deliberate indifference caused the fall—if there was a fall.

---

[5]Sutherland was transferred to the Tarrant County Jail in Fort Worth on a Tarrant County bench warrant on October 18, 2018 through February 8, 2019.  Summ. J Brief 12 n.5, ECF No. 82.

10. Sutherland also admits he was again seen by "JPS ortho" on June 3, 2019. *Id.* at 22. He was released approximately two months later.

### E.    Summary Judgment Evidence

In support of their Motion for Summary Judgment, Defendants attach the following summary judgment evidence in an Appendix ("App"):

Exhibit 1: November 8, 2021 Affidavit of Kaci Sartor, App. 4-5, ECF No. 83;

Exhibit 2: Federal Rule of Evidence 1006 Summary of Medical Treatment, App. 6-8, ECF No. 83; and

Exhibit 3: December 2, 2021 Affidavit of Monica Doughty. App. 9-10, ECF No. 83.

Sutherland did not timely file any response to the motion for summary judgment or present any evidence to contest Defendants' summary judgment motion.

### 1.    Facts Stated in Defendants' Affidavits and Records Summary

Sutherland was booked into Wise County Jail on a parole violation on May 17, 2018 and was released on August 13, 2019. App. (Record Summary) 6-8, ECF No. 83. Prior to his arrest, he was injured in a car accident so the Jail obtained his medical records from Baylor Scott & White ("BSW"). App. (Record Entry May 22, 2018), 6, ECF No. 83. BSW's records indicate the accident occurred on or about April 8, 2018. During his book-in, Sutherland said he had some medical issues because he "fell down stairs." *Id.*  (Record entry for May 17, 2018).

Records show that Sutherland received frequent medical attention after he was jailed. Defendants summarized the voluminous records in an attachment to the Sartor Affidavit pursuant

to Federal Rule of Evidence 1006.[6] App. (Record Summary) 6-8, ECF No. 83.

Within days of his arrival at the Wise County Jail, Sutherland received treatment for pain, blood pressure, and was given medications. App. (Record entry June 21, 2018), ECF No. 83. Some of the medicine had been previously prescribed and was in his possession at the time of arrest. *Id.* (Record entries for May 28, 2018 and June 21, 2018) (medications Lisinopril, Amlodipine, Besylate, Gemfibrozil).

On June 21, 2018, Sutherland saw Nurse Practitioner Suzann Fleming for the first time. She prescribed pain and other medications. *Id*. (Record entry for June 21, 2018). Thereafter, Sutherland saw the Nurse Practitioner approximately nine times. *Id.* (Record entries for July 3, July 6, July 17, August 9, August 14, August 30, October 2, 2018 and February 8 and May 9, 2019).

On June 24, 2018, the Jail had Sutherland transported to John Peter Smith ("JPS") Hospital in Fort Worth for surgery on his back. *Id.* (Record entries for June 24-29, 2018). This was a pre-existing problem probably resulting from an earlier car wreck, which he had complained about when booked into the Jail. The Jail dedicated personnel to the matter from June 24 through June 29 since he was a prisoner. *Id.*

After his back surgery, Sutherland was sent to the local hospital for lipid tests. *Id.* (Record entry for July 12, 2018). In the meantime, the records show that he was also seen by a doctor on July 6, July 27, and July 30, 2018. *Id.* (Record entries for these dates).

---

[6] Defendants inform the Court that Sutherland's medical records were previously copied and made available to him in 2021 in response to his open records request. Summ. J. Brief 13, ECF No. 82.

In August 2018, after Sutherland complained of back pain, new medications were prescribed and LVN Doughty was also involved in administering those to him. *Id.* (Record entry for August 9, 2018). On August 30, Defendant Sartor, also an LVN, saw Sutherland and dispensed nerve medicine per instructions. *Id.* (Record entry for this date).

In April 2019, Sutherland complained of left shoulder and hand pain and was again sent to JPS where he was seen by an orthopedic doctor and a hand specialist. *Id.* (Record entry for April 5, 2019). Other JPS records indicate Sutherland asked for more surgery—this time on his shoulder. No decision was made by the doctors in Fort Worth. *Id.*

In May 2019, Sutherland reported that he fell in his jail cell, and he was taken to the Wise County Regional Medical Center, where he was treated and discharged. *Id.* (Record entry for May 8, 2019).

In June and July 2019, Wise County officials arranged to have Sutherland see Dr. Tibbels and Dr. Cameron Hogsett at JPS for his shoulder. Neither doctor ordered surgery at that time, but Dr. Hogsett indicated a plan for shoulder surgery would be put in place. *Id.* (Record entries for June 6, 7, and July 25, 2019). Appointments were scheduled for August 15 and September 9, 2019. *Id.* (Record entry for July 25, 2019).

On August 13, 2019, Sutherland was released from Wise County custody. *Id.* (Record entry for this date).

F.     **Summary Judgment Analysis**

1.     <u>Law Applicable to Sutherland's Claims of Inadequate Medical Care</u>

As a reminder, 42 U.S.C. § 1983 provides a remedy for the deprivation of "rights,

privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In order to recover under § 1983, a plaintiff must demonstrate (1) a violation of the Constitution or federal law committed by a person acting under color of state law, and (2) that the violation was committed by a person acting under color of state law. *See Hawkins v. Montague Cnty.*, No. 7:10-cv-19-O, 2010 WL 4514641, at *5 (N.D. Tex. Nov. 1, 2010) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005)).

As noted in the review of Sutherland's denial of medical care claims against Dr. Shaw, as an alleged pretrial detainee[7] at the time of the events made the basis of this case, Sutherland's rights flow from the procedural and substantive guarantees of the Fourteenth Amendment. *Olabisiomotosho*, 185 F.3d at 525-26. The Fourteenth Amendment also requires the state to provide for the basic human needs of pretrial detainees, including the right to adequate medical care. *Lacy*, 357 F. App'x at 609. "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Dyer*, 964 F.3d at 380. In order to establish a violation of this constitutional right, a detainee must show that a defendant acted with deliberate indifference to his serious medical needs. *Lacy*, 357 F. App'x at 609. To state a plausible claim of deliberate indifference, a

---

[7] As noted above, Sutherland asserts he was a pre-trial detainee for the events made the basis of this suit. Defendants recite that at the time of the events of this suit, Sutherland may have been a detained parolee. Summ. J. Brief 15, ECF No. 82. To the extent he was a detained parolee, the Fifth Circuit has held that both the 14th and 8th Amendments' standards apply. *Ard v. Rushing,* 597 Fed. App'x 213 (5th Cir. 2014) (citing *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996)). In any event, the analysis under the Fourteenth and Eighth Amendments is the same in this case. *See id.* (explaining that claims for failure to protect are analyzed under the deliberate indifference standard under both the Eighth and Fourteenth Amendments). *See also Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) ("[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care.")

plaintiff must demonstrate that the defendant has actual subjective knowledge of a substantial risk of serious harm but responds with deliberate indifference to that risk. *Id.* (citing *Hare*, 74 F.3d at 647-48).

"Deliberate indifference is an extremely high standard to meet." *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017) (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)). It requires "a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely negligent oversight." *James v. Harris Cnty*, 577 F.3d 612, 617 (5th Cir. 2009) (internal quotations omitted). Indeed, "[a]n official with subjective knowledge of a risk may still be free from liability if he or she 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Perniciaro v. Lea*, 901 F.3d 241, 257 (5th Cir. 2018) (citing *Farmer*, 511 U.S. at 844). To prevail on a claim of inadequate medical care, a plaintiff "must show that the official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) (citations omitted). In addition, unsuccessful medical treatment, medical malpractice, or disagreement with medical treatment "do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

2.    Review of Sutherland Claims under Applicable Law

Review of the summary judgment evidence demonstrates that there was no constitutional violation by Sartor or Doughty. At no time was Sartor or Doughty deliberately indifferent to an excessive risk of harm to Sutherland. There is no evidence showing a genuine dispute of fact as

27

to whether Defendants: (1) were subjectively aware of a substantial or excessive risk of harm to Plaintiff; (2) acted with deliberate indifference to that substantial or excessive risk; or (3) caused a violation of Plaintiff's constitutional rights. *See Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 464 (5th Cir. 2015). Even as the Court examines the evidence in a light most favorable to Sutherland, no other conclusion is possible other than that Sutherland has failed to allege viable constitutional violations.

The records summary chart provided in Defendants' appendix demonstrates that Sutherland was seen and treated by multiple medical professionals at Wise County Jail, including Defendants Sartor and Doughty, shortly after he was arrested. At intake, he complained of injuries from falling down stairs and pain in his back, shoulder, and hand. App. 6 (Record entry for May 22, 2018). Sutherland also reported having been involved in a prior car accident. *Id.* (Record entry for June 21, 2018).  As a result of this information, a jail nurse ordered copies of Sutherland's prior medical records. *Id.* When those records were received, Plaintiff was examined, treated, and prescribed medications. *Id.* (Record entry for June 24-29, 2018).

Sutherland was also transported to JPS in June 2018, where he had back surgery, and he was taken to the hospital for lipid tests after his surgery. *Id.* (Record entries for June 24-28, and July 12, 2018). Sutherland was returned to JPS in April 2019 after complaining of shoulder and hand pain, and he was taken to the Wise County Regional Medical Center in May 2019, after claiming he fell in his jail cell. *Id.* (Record entries for April 5 and May 8, 2019). In addition to these occasions when Sutherland was treated at local hospitals, he was seen, evaluated, and treated by Jail medical staff at least fifteen (15) different times over approximately twelve (12)

28

months, which included prescribing him medications on numerous occasions. *Id.* at 3-5 (various Record entries described as either "Record of Inmate Doctor Visit," "Nursing Clinic Note," or "Inmate Prescriptions form.").

Review of this summary record evidence refutes Sutherland's claims. Defendants Sartor and Doughty never denied Sutherland adequate medical care or otherwise violated his constitutional rights. Neither Defendant was deliberately indifferent to any risk of harm. *See* App. at 2 (Sartor Affidavit ¶¶ 6-7); and at 6-7 (Doughy Affidavit ¶¶ 5-7), ECF No. 83. While Sutherland was in Wise County custody, neither Defendants Sartor or Doughty "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Mason*, 806 F.3d at 279. Sutherland's allegations fall far short of the required "extremely high standard" for deliberate indifference *Id.* Accordingly, Defendants are entitled to summary judgment, and Plaintiff's claims against them should be dismissed with prejudice.

### 3.   Review of Sutherland's Particular Allegations

Defendants have shown that Sutherland's particular claims fail to raise any genuine disputes of material fact.

#### a.   *Complaint about Bandages and Bed Conditions.*

Sutherland alleges that he was exposed to bad bed conditions and forced to change his own bandages after his back surgery at JPS. Am. Compl. 9, ECF No. 15. Sutherland's allegations, however, are vague, generalized allegations with no specific time period referenced. This alone dooms the claim because only substantial incidents involving deliberate indifference

29

are actionable. *See Johnson*, 759 F.2d at 1238 (a showing of deliberate indifference "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants."). Similarly, although Sutherland's claims Defendants "ignored" the situation, there is no claim by Sutherland as to when this occurred or for how long. Based on Fifth Circuit law, in order to have been deliberately indifferent, Defendants would have had to know of a substantial risk of serious harm and "ignore" the situation for an extended period that resulted in substantial harm. *See Mendoza*, 989 F.2d at 195 (delays in providing medical care are not actionable unless it results in substantial harm). In sum, Sutherland's allegations are too vague and sparse to support any claim against either Defendant. Rather, these allegations are refuted by the evidence. See App. (Sartor Affidavit) 4-5; 6-8 (Several Record entries for July 2018); (Doughty Affidavit) 9-10, ECF No. 83.

### b.     Complaint about medical records.

At page 16 of the amended complaint, Sutherland claims that Defendant Sartor lied about her knowledge of receipt of medical records from JPS. Am. Compl. 16, ECF No. 15. This exchange appears to have happened after February 8, 2019, when Sutherland was returned to the Wise County Jail. But there is no indication this caused any damage to Sutherland. *See Mendoza*, 989 F.2d at 195 (substantial harm required).

In fact, Wise County Jail's records indicate medications were ordered on February 8, 2019. App. (Record entry for that date), ECF No. 83. Also, Sutherland again saw his JPS doctor on April 5, and those records were ordered and received. *Id*. (Record entries for February 8 and April 5, 2019). Open records were forwarded from Wise County Health System on May 8, 2019.

*Id.* (Record entry for this date). Thus, the claim has no merit and should be dismissed.

c.       *Claims Relating to Failure to Treat.*

Sutherland asserts that Sartor failed to treat him in October 2018 and implies that Sartor and/or Doughty were responsible for other such failures. *See e.g.*, Am. Compl. 21, ECF No. 15 (claim regarding lack of handicap facilities). But under Texas law, both of these Defendants were licensed vocational nurses whose work was performed under the supervision of a registered nurse, physician, or physician's assistant at the Jail. *See generally* Tex. Occ. Code § 301.353. Thus, it was beyond the responsibility of these LVN's to prescribe medicine, and/or install disability equipment. Sutherland's suggestion the Defendants had such an obligation is not supported by the facts or applicable law.

Sutherland also asserts that, at some completely unspecified time, he was seen by the Nurse Practitioner (Fleming) and Defendant Sartor and told them he could not feel his legs and that walking was difficult. Am. Compl. 7, ECF No. 13.

> [Fleming] simulated a neuro exam. When Sutherland displayed no reflexes, she became agitated and grabbed his foot and made a knee jerk. She also said Sutherland walked to the appt. [sic] so he must be okay and should be able to heel/toe walk . . . . It is well documented that even before the accident,[8] Sutherland had little to no knee jerk on left and nothing below ankle.

*Id.* at 7-8. But as established above, Sartor would have only taken any action in response to this complaint if directed by the Nurse Practitioner who was also present. Thus, this claim does not state any violation by Sartor.

The records provided by Defendants Sartor and Doughty show that Sutherland came into

---

[8]The accident referred to is presumably a car accident just before his arrest.

31

the Wise County Jail with preexisting injuries, some of which he had already received compensation for via Social Security. Others, such as his back issue, were addressed by medical providers. Doughty or Sartor acted only as vocational nurses, and they have shown that neither of them had any substantial role in Sutherland's care and treatment.

For all of the foregoing reasons, Defendants Sartor and Doughty are entitled to summary judgment that all Sutherland's claims against them fail to state viable claims of a violation of a constitutional right, such that each of them are entitled to qualified immunity.

## IV.   CONCLUSION and ORDER

It is therefore **ORDERED** that Defendant Officer Gay's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 69) is **GRANTED**, such that all Sutherland's remaining claims against Officer Gay are **DISMISSED WITH PREJUDICE**.[9]

It is further **ORDERED** that Defendant Dr. Shaw's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 72) is **GRANTED**, such that all Sutherland's remaining claims against Dr. Shaw are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion for summary judgment of Defendants Kaci Sartor and Monica Doughty (ECF No. 81) is **GRANTED**, such that all Sutherland's remaining claims against Kaci Sartor and Moncia Doughty are **DISMISSED** with prejudice.

**SO ORDERED** this **4th day** of **May, 2022.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[9]Officer Gay also moves the Court to declare that Sutherland is a vexatious litigant subject to a sanction bar related to any future lawsuits. Gay Mot. Dism, 20-23, ECF No. 69. The Court will hold consideration of this request until the issuance of any final order resolving all claims in this case.